No. 01-193

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 42N

STUART JONATHAN PICKENS,

Petitioner and Appellant,

v.

STATE OF MONTANA (CSED), and
LYNNETTE SHELTON-THOMPSON

Respondents and Respondents.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:
Paul Neal Cooley, Skelton & Cooley, Missoula, Montana
For Respondents:
Peggy Probasco, Child Support Enforcement Division, Butte, Montana;          Chuck Schuyler,
Marsillo & Schuyler, Missoula, Montana

Submitted on Briefs: October 4, 2001

Decided:  March 7,
2002

Filed:

_____

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    Appellant Stuart Pickens appeals from an order issued by the Fourth Judicial District Court, Missoula County, which denied his petition for judicial review of an administrative decision ordering Pickens to pay child support, and imposed Rule 11, M.R.Civ.P., sanctions.  We affirm in part and reverse in part.

¶3    We address the following restated issues on appeal:

¶4    1.  Were the parenting and support proceedings initiated on Lynnette Shelton-Thompson's behalf time-barred?

¶5    2.  Did the District Court err when it denied Pickens' petition for judicial review?

¶6    3.  Did the District Court err when it issued Rule 11, M.R.Civ.P., sanctions against Pickens?

¶7    4.  Did the District Court err when it denied Pickens' motion for costs on appeal?

## FACTUAL AND PROCEDURAL BACKGROUND

¶8    On July 24, 1981, Respondent Lynnette Shelton-Thompson gave birth to a daughter.  On August 28, 1995, Lynnette requested that Respondent State of Montana, Child Support Enforcement Division ("CSED"), establish paternity for her daughter and obtain support from Pickens, the alleged father.  What transpired over the next two years is unclear.  The parties dispute whether CSED contacted Pickens and the record fails to shed light on their contentions.  Nevertheless, on October 12, 1997, CSED served Pickens with a notice of parental responsibility and a notice and order concerning support.  Pickens failed to respond to both notices and CSED subsequently entered default orders for paternity and support.

¶9    Ultimately, an administrative law judge set aside the default orders.  However, in the interim Pickens submitted to a paternity test which indicated with 99.99% probability that he was the father.  Following this result, on March 12, 1998, Pickens executed an admission of paternity.

¶10   On June 1, 1998, CSED issued and subsequently served Pickens with another notice and order concerning support. CSED alleged in the notice that Pickens owed child support in the amount of $311 per month, retroactive to June 1, 1996. Pickens filed a timely request for hearing to contest the support order. On August 28, 1998, following the hearing, the administrative law judge ordered Pickens to pay, among other things, $299 per month in child support, retroactive to June 1, 1996. The order obligated Pickens to provide support until the child became emancipated.

¶11   On September 24, 1998, Pickens filed a petition ("Pickens 1") for judicial review of the administrative order. On December 2, 1998, prior to the District Court's ruling on the Pickens 1 appeal, Pickens moved the administrative law judge for an order to correct a clerical error in its August 28, 1998 order. The administrative law judge amended the order per Pickens' request. On December 15, 1998, the District Court dismissed Pickens 1 for lack of jurisdiction for failure to issue and serve summons. The District Court subsequently denied Pickens' motions to reconsider. On the same day the District Court denied his motion to reconsider, Pickens filed a separate "Complaint" ("Pickens 2") which sought judicial review of the recently amended administrative order. On March 10, 1999, while Pickens 2 was pending before the District Court, Pickens filed a notice of appeal from the dismissal of Pickens 1 with this Court.

¶12   On April 5, 1999, while Pickens 1 was pending before this Court and while Pickens 2 was before the District Court, Pickens applied to CSED for a modification of the support order contemplated in Pickens 1 and 2. On April 22, 1999, the District Court dismissed Pickens 2. Pickens appealed the dismissal to this Court and we consolidated Pickens 1 and 2 on appeal. On June 1, 1999, the administrative law judge dismissed Pickens' request for modification. Pickens filed another petition for review ("Pickens 3") which sought the District Court's review of that dismissal. On December 21, 1999, the District Court dismissed Pickens 3 and awarded attorney fees to Lynnette and a statutory fee to the State of Montana.

¶13   On May 23, 2000, we reversed the District Court's dismissal of Pickens 1 and remanded the matter to the District Court for proceedings on Pickens' first petition. On remand, the District Court ordered the parties to incorporate all of the relevant issues from Pickens 2 and 3 into Pickens 1. On November 9, 2000, the District Court affirmed the administrative law judge's support order and sanctioned Pickens and his attorney pursuant to Rule 11, M.R.Civ.P., for the bad faith filing of the three petitions. Further, the District Court denied Pickens' request for costs incurred on appeal and issued a restraining order prohibiting any and all contact with Lynnette. Pickens appeals.

## STANDARD OF REVIEW

¶14   The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686. Regarding Rule 11, M.R.Civ.P., sanctions, a district court's findings of fact will not be overturned unless they are clearly erroneous. Fjelstad v. State (1994), 267 Mont. 211, 226, 883 P.2d 106, 114-15. A district court's conclusion that the facts constitute a violation of Rule 11, M.R.Civ.P., will not be reversed absent an abuse of discretion. Fjelstad, 267 Mont. at 226, 883 P.2d at 115.

# DISCUSSION
## ISSUE 1

¶15   Were the parenting and support proceedings initiated on Lynnette Shelton-Thompson's behalf time-barred?

¶16   Pickens asserts that Lynnette and CSED were barred from pursuing paternity and support proceedings by the statute of limitations provision in effect at the time of the daughter's birth.  That statute, § 40-6-108(3), MCA (1979), provided:

> An action to determine the existence or nonexistence of the father and child relationship as to a child who has no presumed father under 40-6-105 may not be brought later than 3 years after the birth of the child.

Pickens indicates that Lynnette did not apply for CSED assistance until 1995.  Therefore, Pickens insists that as of 1995 the daughter possessed the only viable cause of action for paternity and support, as any potential claim by Lynnette and CSED were time-barred.

¶17   Pickens relies exclusively on this 1979 statute for his time bar proposition.  However, the Legislature amended that very statute prior to the paternity and support proceedings initiated by Lynnette.  At all times relevant to these matters, § 40-6-108(3), MCA, has provided:

> An action to determine the existence or nonexistence of the father and child relationship as to a child who has no presumed father under 40-6-105:
>
> (a) may not be brought by the child later than 2 years after the child attains the age of majority;
>
> (b) may be brought by a state agency at any time after the first application is made under Title IV-D of the Social Security Act for services to the child and before the child attains the age of majority.  This subsection is intended to apply retroactively, within the meaning of 1-2-109, to any child for whom a paternity action was barred or could have been barred by a shorter limitation period.  However, in previously barred actions that are revived by this subsection, the father is not liable to the state agency for support of the child.

Clearly, CSED initiated proceedings following Lynnette's application before the child reached the age of majority.  Further, CSED did not seek remuneration from the father as he owed no support to the State of Montana.  CSED simply provided services to Lynnette in an attempt to establish support on her behalf.  Section 40-6-108(3), MCA, does not say CSED "may not act on behalf of the mother in previously barred actions" as Pickens suggests. Therefore, the retroactive provision in the current statute effectively negates Pickens' time-bar argument.

¶18    Moreover, after CSED served Pickens with a notice of parental responsibility and a notice and order concerning support in 1997, he submitted to a paternity test which indicated with 99.99% probability that he was the father.  Pickens subsequently executed an admission of paternity on March 12, 1998.  If the scientific evidence resulting from a paternity blood test shows a 95% or higher statistical probability of paternity, the alleged father is presumed to be the natural father of the child.  Section 40-5-234(3)(b), MCA.  A presumption of paternity established under this section is a sufficient basis for establishing a support order.  Section 40-5-234(6), MCA.  Accordingly, we conclude that Pickens' "time-bar" argument is without merit.

## ISSUE 2

¶19    Did the District Court err when it denied Pickens' petition for judicial review?

¶20    Pickens claims that the District Court committed reversible error in several respects.  First, Pickens asserts that CSED did not have standing to pursue a paternity or support order on Lynnette's behalf.  Second, Pickens argues that the decision to order support constituted an impermissible exercise of judicial power by an administrative agency.  Third, Pickens maintains that the administrative law judge acted arbitrarily and without legal justification in establishing June 1, 1996, as the commencement date for Pickens' support obligation.  Fourth, Pickens argues that the District Court erred when it denied his request to modify the monetary support obligation.  Finally, Pickens insists that the District Court should have obtained and reviewed a transcript from an administrative proceeding prior to reaching a final determination.  We will address each argument in turn.

¶21    As to his first two contentions, Pickens states that "this action was filed in the wrong place by the wrong party."  According to Pickens, "CSED has no authority to determine paternity in a previously barred action in its own self styled administrative forum."  However, § 40-5-203(1), MCA, provides:

> The department may accept applications for child support enforcement services on behalf of persons who are not recipients of public assistance and may take appropriate action to establish or enforce support obligations against persons owing a duty to pay support.

Further, § 40-5-202(2), MCA, states:

> A verified statement, filed by the department, that it is providing services is prima facie evidence of its authority to act.  Upon filing, the department may, on behalf of itself or on behalf of the obligee, obligor, or child, initiate, participate in, intervene in, or exercise any remedy available in a judicial or an administrative action on the same basis as any other party.

Sections 40-5-202 and -203, MCA, clearly authorize CSED to initiate support proceedings on Lynnette's behalf in the administrative forum.  There is no indication in the record that CSED acted in a manner

inconsistent with the procedural requirements contained therein. Therefore, Pickens' first two assignments of error are not well taken.

¶22 Next, Pickens argues that the District Court erred when it affirmed June 1, 1996, as the appropriate commencement date for support. Pickens asserts that he was not served with a proper notice and order concerning support until June of 1998. Therefore, he claims "it is wholly inequitable under the principles of estoppel or laches to allow [Lynnette] to collect for support for two years prior to the June 1, 1998 order being issued." Section 40-5-226(3), MCA, provides:

> The hearings officer shall determine the liability and responsibility, if any, of the parent or parents under the notice and shall enter a final decision and order in accordance with the determination. The order may award support from the date of:
>
> (a) the child's birth if paternity was established under 40-5-231 through 40-5-238 or under Title 40, chapter 6, part 1, subject to the limitation in 40-6-108(3)(b).

As indicated above, CSED established paternity through § 40-5-234(3)(b), MCA, and Pickens' admission. Further, the support obligation does not implicate the limitation in § 40-6-108(3)(b), MCA. Therefore, the administrative law judge was justified in establishing June 1, 1996, as the commencement date for support.

¶23 Pickens also maintains that his changed economic situation compelled a downward modification of the monetary support obligation. However, the District Court found that:

> Stuart Pickens requested leave to provide certain income information to CSED for recalculation of child support. However, he did not provide such information within the ten days following the hearing in 1998, as allowed, and has never provided a copy of his actual tax return for 1997.

Further, Pickens did not file his request for modification until April 5, 1999. Pickens' daughter married and, thus, became emancipated in August 1999. The alleged mitigating circumstances necessitating modification would have had a minimal impact on Pickens' support obligation and we will not overturn a district court's findings of fact unless they are clearly erroneous. The record simply does not support a "clearly erroneous" conclusion. Therefore, Pickens' third and fourth assignments of error are without merit.

¶24 Finally, Pickens insists that the District Court should have obtained and reviewed a transcript from an administrative proceeding prior to reaching its final determination. The transcript to which Pickens refers is that of the administrative evidentiary hearing held in contemplation of Pickens' motion to set aside the initial default orders. Ultimately, the administrative law judge granted Pickens' motion to set aside the default orders and Pickens did not appeal that order to the District Court. Further, Pickens did not raise the transcript issue before the District Court in his consolidated Pickens 1-3 "Brief Supporting Judicial Review." Therefore, we decline to address this issue on appeal.

¶25    Accordingly, for the reasons set forth above, we hold that the District Court did not err when it denied Pickens' petition for judicial review.

## ISSUE 3

¶26    Did the District Court err when it issued Rule 11, M.R.Civ.P., sanctions against Pickens?

¶27    Pickens contends that the District Court erred in assessing Rule 11, M.R.Civ.P., sanctions because none of the petitions were frivolous or filed with malicious intent. Pickens takes exception to the imposition of sanctions, in part, because the District Court "conducted no factual hearings and took no new evidence" prior to its ruling.

¶28    Following the remand of Pickens 1, Pickens could have requested that the District Court hear oral argument on the issues raised by Pickens 1-3, which included a request for the imposition of Rule 11, M.R.Civ.P., sanctions. See Section 40-5-253(5), MCA. In fact, in its order which consolidated Pickens 1-3, the District Court stated that "[a]fter the briefs are filed and upon motion of any party, a hearing may be set for oral argument as provided in [§ 40-5-253](5) . . . ." However, Pickens did not request such a hearing and the District Court entered its findings of fact based on the parties' briefs and the procedural history of the case. Consequently, the District Court found that:

> The three petitions filed by Stuart Pickens and signed by his attorney constitute harassment of Lynnette Shelton-Thompson. This may result in sanctions imposed upon the attorney signing the pleadings and upon the represented party and may include reasonable attorney's fees being owed to the injured party. The Court finds the pleadings were filed in bad faith.

We conclude that the District Court's findings of fact are not clearly erroneous and the District Court did not abuse its discretion in concluding that the facts constitute a violation of Rule 11, M.R.Civ.P.

## ISSUE 4

¶29    Did the District Court err when it denied Pickens' motion for costs on appeal?

¶30    On June 28, 2000, following our reversal of Pickens 1, Pickens filed a bill of costs with the District Court to recover his costs on appeal. In its November 9, 2000 order, the District Court denied Pickens' request for costs on the grounds that "[c]osts for appeal are discretionary under § 25-10-104, MCA, and under Rule 33(a), M.R.App.P. . . . ." Pickens argues that he was the prevailing party on appeal and, thus, automatically entitled to his appellate costs.

¶31    Rule 33(a), M.R.App.P., provides:

> Costs on appeal in civil cases will be taxed as provided by section 25-10-104, Montana

Code Annotated, and if not otherwise provided by the court in its decision, will automatically be awarded to the successful party against the other party. All costs on appeal shall be claimed as provided by section 25-10-503, Montana Code Annotated.

Section 25-10-104, MCA, provides:

(1) In the following cases, the costs of appeal are in the discretion of the court:
(a) when a new trial is ordered;
(b) when a judgment is modified.
(2) In all other cases the successful party shall recover from the other party his costs.

The discretion referenced in § 25-10-104, MCA, is the discretion of the appellate court. State ex rel. Nesbitt v. District Court (1946), 119 Mont. 198, 200, 173 P.2d 412, 413.

¶32 In the consolidated Pickens 1 and 2 appeal, we were faced with the legal question of whether the District Court properly dismissed Pickens' first petition for judicial review for lack of subject matter jurisdiction. Pickens v. Shelton-Thompson, 2000 MT 131, ¶ 2, 300 Mont. 16, ¶ 2, 3 P.3d 603, ¶ 2. We held that the district court's dismissal of Pickens' petition violated his right to due process of law and constituted an abuse of discretion. Pickens, ¶ 22. As we reversed the district court on a legal question, Pickens was the successful party on appeal for purposes of Rule 33(a), M.R.App.P., and § 25-10-104, MCA. See In re Marriage of Kuzara (1986), 224 Mont. 124, 127, 728 P.2d 786, 788. Accordingly, Pickens was automatically entitled to his appellate costs. To the extent the District Court's November 9, 2000 order denied Pickens' motion for costs on appeal, it is reversed.

¶33 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART